IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| CALVIN B. JAMES,<br><br>    Petitioner,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Respondent. | CRIMINAL ACTION NO.: 4:18-cr-205 |

**O R D E R**

Pending before the Court are Movant Calvin James' "Motion for Application of Section 821," (doc. 235), "Motion for Gainful Employment," (doc. 236), "Motion for Relief from Judgment/Order," (doc. 237), "Motion for Habeas Corpus," (doc. 238), "Motion for Relief from Judgment/Order," (doc. 239), "Motion to Entertain a Parties Independent Cause to Regain Liberty," (doc. 250), "Motion to Entertain a Parties Independent Cause to Regain Liberty," (doc. 251), "Motion to Proceed in forma pauperis," (doc. 253), "Motion to Proceed 'In Forma Pauperis,'" (doc. 254), "Motion to Courts," (doc. 260), "Motion to Impose Sanction and or Court Order," (doc. 264), "Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)," (doc. 266), "Motion to Courts," (doc. 267), and "Tort Claim for Wrongful Act/Omission," (doc. 269). Also pending are Respondent's Motion for Extension of Time (doc. 268), and their Motion to Seal Exhibit, (doc. 272).

    **I.    PROCEDURAL HISTORY**

James was convicted after a jury trial in this Court on January 31, 2019, (doc. 57), and sentenced on April 8, 2019, (doc. 67). He lost his direct appeal. (Docs. 104, 105); see also

United States v. James, 831 F. App'x 442 (11th Cir. 2020) (per curiam).  Even before the appeal opinion was docketed, James began to collaterally attack his conviction and sentence, and his efforts continue.  (See, e.g., docs. 75, 98, and 99; see also docs. 124, 128, 175, 176, 178, 179, 197, 214, 238.)  This Court already directed James to consolidate "every ground" he asserted within one document, instead of filing piecemeal pleadings and cases.  (See doc. 183, p. 5.)  Although James did not comply with the Court's Order, he filed documents asserting grounds which the Court charitably construed as supporting a Motion to Vacate under § 2255.  (Doc. 196, pp. 8-20.) In the Magistrate Judge's Recommendation denying those grounds, the Court noted that James is a serial filer who frequently seeks release from prison "based upon his own misunderstanding of criminal procedure," and "even though he has been informed of why his arguments fail, he continues to pursue them."  (Id., p. 3; see also id., p. 4 (noting that James has filed at least 30 cases in this district).)  Nevertheless, the Court has repeatedly reviewed James' arguments, finding they are meritless.  (See, e.g., id., pp. 9-23.)  Specifically, this Court has entertained motions which argue, *inter alia*, that: the evidence to convict or substantiate his sentence was insufficient (see e.g., docs. 174, 196); his arrest and indictment were unconstitutional (doc. 196, p. 13); his sentence should be reduced under sentencing guideline adjustments or a fictional "second chance act" (docs. 199, 209, 218); jurisdictional issues (doc. 128); changes to law, including the Cares Act, mandate an early release from prison (doc. 213); arguments related to §922(g), such as that the statute has been classified as unconstitutional, and therefore, James' conviction should be expunged or his sentence be reduced, (doc. 199; see also docs. 196, 203, 222, p. 4); claims under Rehaif v. United States, 588 U.S. 225 (2019), (doc. 197); and that prison does not offer sufficient opportunities and

therefore, James should be set free, (Docs. 210, 218; see also doc. 222, p. 5).[1]  James appears to have no intention of taking heed of this Court's prior denials of these motions.

## II.   DOCKET MANAGEMENT ORDER

James has filed many duplicative motions.  James' last Motion to Vacate, (doc. 214), was dismissed as successive, (doc. 222), and his prior attempt was denied, (doc. 203).  James appealed that denial but his appeal was dismissed for want of prosecution.  (See doc. 247.)  His request to file a second or successive petition was also denied by the Eleventh Circuit, (doc. 233).  He has filed seven motions to reduce his sentence.  (Docs. 129, 174, 199, 213, 218, 235, 260.)  He also files papers which do not request relief which can be granted, or those which ostensibly seek some relief but provide no basis for which he is entitled to that relief.  (See, e.g., doc. 236 Motion for gainful Employment; doc. 250 ("Motion to Entertain a Parties' Independent Cause"); doc. 267 ("Motion to Courts"); see also doc. 238 ("Motion for Habeas Corpus").)  In some of his filings, James appears to seek relief based on the "sovereign citizen" theory, and his motions which seek relief on that basis are due to be summarily denied. Mells v. Loncon, 2019 WL 1339618, at *2 (S.D. Ga. Feb. 27, 2019) (referring to sovereign citizen theories as "claptrap" and "gobbledygook," report and recommendation adopted, 2019 WL 1338411 (S.D. Ga. Mar. 25, 2019) (citing United States v. Sterling, 738 F.3d 228, 233 n. 1 (11th Cir. 2013) (noting that courts routinely reject sovereign citizen legal theories as "frivolous") (citations omitted); Linge v. State of Georgia Inc., 569 F. App'x 895, 896 (11th Cir. 2014) (rejecting such theories as "wholly unsubstantial and frivolous"); Roach v. Arrisi, 2016 WL 8943290, at *2 (M.D. Fla. 2016) (noting that sovereign citizen theories have not only been consistently rejected by the courts, but they have been described

---

[1]  James also filed several frivolous cases under 42 U.S.C. § 1983 and is now considered a "three striker" for purposes of § 1915(g). James v. Moore, 2022 WL 2718722, at *2 (S.D. Ga. July 13, 2022).

as "utterly frivolous," "patently ludicrous," and "a waste of . . . the court's time, which is being paid for by hard-earned tax dollars") (citattion omitted); United States v. Alexio, 2015 WL 4069160, at *3 (D. Haw. 2015)).

Additionally, James' motions are extremely difficult to parse. They are often illegible, and the Clerk is burdened with deciphering his filings unnecessarily, given their frivolous nature. Often, the Clerk is left to guess what relief James seeks, and forced to enter docket text reflecting that conjecture, which then is placed upon the undersigned's docket for consideration despite its true nature having no text which ordinarily would mandate review by a district judge. Thus, the Clerk is hereafter **DIRECTED** to docket any paper filed by James as a "Notice of Filing," and refer that Notice to the Magistrate Judge for consideration. The Magistrate Judge is **DIRECTED** to construe the filing based on its true nature, bearing the following instruction in mind:

(1) If the Magistrate Judge determines the filing should be reasonably construed as a request to file a successive petition under § 2255 (Motions to Vacate), that filing shall be forwarded to the Eleventh Circuit for consideration of whether a successive petition should be allowed. 28 U.S.C. § 2255(h); Darby v. Hawk-Sawyer, 405 F.3d 942, 945 (11th Cir. 2005) ("When a prisoner has previously filed a § 2255 motion to vacate, he must apply for and receive permission . . . before filing a successive § 2255 motion.").

(2) If the Magistrate Judge, in his review, recognizes sovereign citizen theories as a basis for relief, they shall not warrant disposition or response from the Respondent.

(3) If the Magistrate Judge, in his review, encounters James' filings which assert they are an "independent cause," that filing cannot be reasonably construed as a motion which seeks any relief in this court, and it will not warrant disposition or Response from the Respondent.

(4) If the Magistrate Judge, in his review, determines James' seeks to obtain monetary relief from any immune person whom he has already attempted to sue or engage in frivolous and vexatious pursuits for monetary damages or sanctions against those individuals or entities, James requests shall be summarily denied.

(5) If the Magistrate Judge, in his review, encounters a filing which may be reasonably construed as a nonduplicative Motion to Reduce Sentence, the Magistrate Judge will direct Respondent to respond to that Motion, and it will be considered by the district judge, undersigned, in due course.

4

(6) If the Magistrate Judge, in his review, encounters a filing seeking sentence reduction on a basis that does not exist in the law, or if it is duplicative of a previously filed motion which has already been denied by the Court, the motion shall be summarily denied.

### III. JAMES' PENDING MOTIONS

The Court now turns to James pending motions, all of which are due to be denied. First, James has filed two Motions to proceed in forma pauperis. One of these motions, (doc. 253) was docketed by the Clerk as a Motion for Leave to Appeal in forma pauperis likely because James sought an appeal at the time of filing, (doc. 241), but is titled "Motion to Proceed in Forma Pauperis. The other, (doc. 254), is also titled "Motion to Proceed 'In Forma Pauperis,'" and in this Motion, James insufficiently attempts to meet the requirement that he submit an affidavit containing a statement of all his assets and show that he is unable to pay fees. 28 U.S.C. § 1915(a)(1). Neither Motion contains sufficient support for the Court to grant James IFP status—whether that be in his efforts for appeal or otherwise. Pursuant to 28 U.S.C. § 1915(a)(1), this Court may allow James to proceed on appeal without prepayment of fees if he submits an affidavit that includes a statement of all his assets and shows that he is unable to pay such fees or give security therefore. However, "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3); see Fed. R. App. P. 24(a)(3)(A). In this instance, James has failed to provide a sufficient affidavit, and because any attempt at appeal would not be taken in good faith, the Court denies his request. Therefore, James' Motions, (docs. 253, 254), are **DENIED**.

The second group of Motions filed by James include those in which he seeks relief from this Court's Orders. In his first "Motion for Relief from Judgment/Order, (doc. 237), James complains that this Court's April 23, 2024 Order was entered without acknowledging James'

timely filed Objection, which was docketed the same day. (See doc. 203; see also doc. 202.) However, the Court later reviewed James' Objection and overruled it, finding that it was merely an attempt to pursue erroneous arguments and to rehash contentions which had already been dispelled. (See doc. 205.) His next Motion for Relief from Judgment, (doc. 239), seeks reversal of the Court's December 5, 2024 Order, (doc. 219). James complains that he was never given an opportunity to object to the undersigned's Order which directed the Clerk to discontinue its practice of allowing Petitioner to file papers in defunct civil clones of his criminal docket. This docket management order is not subject to the 28 U.S.C. § 636(b)(1)(B) requirement that James' be allowed to object, and it was entered by the undersigned as a final order. James was not entitled to object to that order. James' Motions seeking relief from this Court's orders are **DENIED,** (docs. 237, 239).

Next, James has filed documents which appear to assert sovereign citizen theories. First, James' "Motion for Habeas Corpus Pursuant to 28 U.S.C. 2255," (doc. 238), is completely frivolous. In this Motion, rather than stating any possible avenue to pursue § 2255 relief, James asserts what appears to be his own "charges" of "Criminal Conspiracy to Oppress and Injure Per 18 U.S.C.S. 241, 242, and Kidnapping." (See id. at 1.) James follows this "charge" with what the Court surmises is a sovereign citizen theory of relief: James claims that he has no "binding contract" nor has he "agreed by consent or mutual understanding to be subject to laws, penalties, or punishment of [the] United States Government." (Id.) He also complains that he is being "detained against [his] will" and that "courts have no authority w/o consent to sentence or punish [him]." (Id.) Despite his allegation, the United States' government's laws apply to him with full force and indeed restrict his liberty under the duly imposed sentence against him. James then filed a document which he titles "Motion to Entertain a Parties' Independent Cause to Regain

Liberty."  (Docs. 250, 251.[2])   In this Motion, James claims that he is "not convinced that Courts can expunge my right to bear arms, nor has documentation been provided of [his] consent to expunge such right <<to bear arms>>.  (Doc. 250.)   This filing is nonsensical and frivolous.   He also filed a "Motion to Courts" which is similarly frivolous and is also vexatious.   (Doc. 267.)   In this "Motion to Courts," James argues that:

> Man cannot commit a crime against any state or the United States as a whole to the exclusion of damage of actual land, meaning property or persons . . . Courts note no destruction of property or land in this claim nu. CR418-205.

James also notes that he seeks to "denounce" his citizenship.  (Id. at 2.)   This motion relies on sovereign citizen principles to seek release from custody, and the Court will not entertain such nonsense.   All these requests are **DENIED** (docs. 238, 250, 251, 267.)   James is forewarned that his attempts to file motions to "Entertain a Parties' Independent Cause" and his attempts to seek relief based on sovereign citizen theories will be docketed to preserve the record, but because they seek no basis for viable relief and are untethered to the law, they do not deserve further disposition.   Such motions thus will not receive this Court's review and will not merit a required response from Respondent.   Under the above instructions, the Magistrate Judge is directed to construe these motions, however they are captioned, as what they truly are: "gobbledygook."   They do not warrant continued review from this Court.

Next are the motions which James has filed in which he expresses frustration regarding the opportunities available while he is in prison.   He filed a "Motion for Gainful Employment," (doc. 236), a "Motion to Impose Sanction and or Court Order," (doc. 264), and a "Motion for Sentence Reduction under 18 U.S.C. 3582(c)(1)(A), (doc. 266).   While

---

[2]  This filing is docketed twice, likely because it seeks two forms of relief: (1) to have his §922(g) conviction expunged; and (2) to be released from custody.

7

the latter is styled differently and is drafted on a standard form for seeking compassionate release (and docketed as such by the Clerk), this Motion merely repeats the same frustrations James has indicated thus far. In the first two of these motions, (docs. 236, 264), James states that he is unable to gain employment or vocation trade skills while in prison facilities. He asserts that the failure to offer such programs constitutes negligence and will impact his future reentry into society. His "Motion to Impose Sanction and or Court Order" complains that he has been incarcerated nearly 7 years but remains unemployed. (Doc. 264.) He states that, due to the high number of lockdowns, his access to educational programs has been hindered. (Id.) Moreover, the waitlist for vocation courses is "more lengthy than actual colleges in America." (Id.) He also complains that the prisons are unsafe because they "force alien persons to commit to other aliens neglecting vital components of compatibility and mutual consent to be co-habitants." (Id.) Though he does not identify the culprit, he also argues that someone neglects the "fact of high volume of physical contact that has occurred among habitants." (Id.) The Court is perplexed by his complaint about the compatibility of his cohabitants, but this assertion would not constitute a cognizable claim no matter how leniently the Court construed it.

As to his frustrations regarding the opportunities available to prisoners for vocational training, the Court is not convinced that James has filed these motions in good faith. Given the record, the Court is skeptical that James seeks to do anything more but use the Court's procedures as a complaint department. However, even giving him the benefit of the doubt, his claim fails. To the extent that James complains that his recent transfer to FCI El Reno rendered his conditions of confinement so different from the "ordinary incidents of prison life" such that it violated his due process rights in that he may

no longer access vocational programs he did at his prior prison, his claim fails. The Eleventh Circuit has recognized two scenarios in which a prisoner has a liberty interest protected by due process: (1) when the conditions of confinement are "so severe that [they] essentially exceeds the sentence imposed by the court" and (2) "where the state has consistently provided a benefit to a prisoner and deprivation of that benefit imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Woodson v. Whitehead, 673 F..App'x 931, 933 (11th Cir. 2016) (quoting Kirby v. Siegelman, 195 F.3d 1285, 1290-91 (11th Cir. 1999)). The "touchstone" of whether inmates have a state-created liberty interest in avoiding restrictive conditions of confinement is "the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.' " Wilkinson v. Austin, 545 U.S. 209, 223 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995).

James' filings resemble an attempt to pursue relief under the second theory. However, it is an ordinary incident of prison life for a prisoner to be transferred to another facility and lose "access to vocational, educational, recreational, and rehabilitative programs.'" McKune v. Lile, 536 U.S. 24, 39 (2002) (quoting Hewitt v. Helms, 459 U.S. 460, 467, n. 4 (1983)). An inmate has no liberty interest in a particular classification, prison assignment, or transfer even if the inmate loses access to rehabilitative programs and experiences more burdensome conditions than before. Id. Therefore, James has not alleged he was deprived a state created liberty interest. Moreover, to the extent that James attempts to argue that the repeated lockdowns which resulted in further difficulty to access the vocational training violates due process, that claim fails as well. See Turner v. Warden, 650 F. App'x 695, 699-701 (11th Cir. 2016) (per curiam) (no liberty interest

where plaintiff regularly received meals, five hours of outdoor recreation time each week, showered three times per week, was allowed personal property, was not denied human contact, and received visitation on weekends, as these conditions were similar to those in general population); Walker v. Grable, 414 Fed.Appx. 187 (11th Cir. 2011) (per curiam) (no liberty interest where inmate was placed in administrative segregation for only 11 days and failed to allege that conditions in segregation were different from conditions in general population); but cf., e.g., Wallace v. Hamrick, 229 F. App'x 827 (11th Cir. 2007) (per curiam) (liberty interest found where plaintiff was in administrative segregation for 28 days with no hot water, no ventilation, and no opportunity for exercise while awaiting a hearing on his disciplinary violations). James' Motion for Gainful Employment," (doc. 236) and his "Motion to Impose Sanction and or Court Order," (doc. 264), are both **DENIED**.

James' filing drafted on the "Pro Se Motion for Compassionate Release" form also fails. (Doc. 266.) In this filing, James claims that he sought compassionate release from the warden on January 2025, which he says was denied. (Id. at 3.) He claims he lacks access to his legal property and is thus unable to attach the "motion" and "response," which would presumably prove that he has done so in effort to exhaust his administrative remedies. (Id.) He then claims there are extraordinary and compelling reasons justifying his early release and checked multiple boxes provided, including that he suffers from a serious physical or medical condition, a serious functional or cognitive impairment, or a deterioration in his physical or mental health because of the aging process;[3] and that he suffers from a medical condition that requires long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or

---

[3] James also indicated that he is under the age of 70. (See doc. 266, p. 4.)

10

death.  (Id. at 4-5.)  He also claims "[t]here is another circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described are similar in gravity" to those provided, and that he "received an unusually long sentence," of which he has served "at least 10 years of the term of imprisonment, and a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) would produce a gross disparity between the sentence being served and the sentence likely to be imposed on the date of filing the motion."  (Id. at 5.)

James asserts these claims without providing any support.  He merely explains that:

> medical neglect and access urgent healthcare and medical facilities which is negatively effecting my health.  Psychiatric impairments that prison and continued isolation destructively effect.  I don't' have access to records and requests to detail negligence.

(Doc. 266, p. 6.)  He later claims that he has served 70% of his sentence, and that his "cognitive abilities have become impaired and isolation and prison environments aid in deterioration."  (Id.) James admitted on this form that he has been imprisoned for only 81 months, despite his indication that he had served at least 10 years of his term.  (See id. at 2; see also id. at 5.)

Respondent sought extra time to respond to this Motion, (see doc. 268), so that it could obtain more information from the Bureau of Prisons (BOP).  James' response deadline did not run until after the Respondent's deadline to file, but he has not responded.  Respondent responded on March 31, 2025 and simultaneously filed a Motion to Seal an exhibit to that Response. Respondent's Motion for Extension of time is **DISMISSED** as **moot**, (doc. 268), given it has now responded.  However, its Motion to Seal is completely unsupported.  (Doc. 272.)  The Eleventh Circuit has explained that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern and the common-law right of access to judicial proceedings, an

essential component of our system of justice, is instrumental in securing the integrity of the process." Romero v. Drummond Co., 480 F.3d 1234, 1245 (11th Cir. 2007) (internal quotation marks omitted) (quoting Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), and Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001)). "[T]he common-law right of access includes the right to inspect and copy public records and documents." Chicago Tribune Co., 263 F.3d at 1311 (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) (referencing specifically the right to inspect and copy "judicial records and documents.")). Moreover, although many of James' filings place this case in a quasi-civil status, the Motion for Compassionate release impacts his criminal case, and therefore, exhibits countering the propriety of that release constitute documents relevant to criminal trial proceedings. And "[t]he press and the public enjoy a qualified First Amendment right of access to criminal trial proceedings." United States v. Ochoa-Vasquez, 428 F.3d 1015, 1028 (11th Cir. 2005). A party can rebut the presumption of openness "if it can show 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Id. at 1030 (quoting Press-Enterprise Co. v. Superior Ct. of Cal., Riverside Cnty., 464 U.S. 501, 510 (1984)). When sealing documents, the Court must "articulate the overriding interest along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." Ochoa-Vasquez, 428 F.3d at 1030.

Although the time for the James to respond to the motion to seal has not yet run, the Court has reviewed Respondent's Motion, and given the readily apparent failures, the Court has determined that it must be denied. Respondent did not submit the material sought to be filed under seal, and thus the Court has not reviewed it. See S.D. Ga. LR Crim 49.1(b)(2). Nor has Respondent provided any information sufficient to show that closure is essential for the exhibits

to its Response. (See doc. 272.) Other than generally indicating the documents contain "defendant's health records from the Bureau of Prisons," the Motion does not identify, by reference or otherwise, what information might be found in the exhibit which would support a need for sealing. (Id.) Nor has the Respondent shown why redaction of any private information which it presumably finds necessary to keep private would not accomplish its goals. See S.D. Ga. LR Crim 49.1(a)(2) ("Requests for sealing should be narrowly tailored to the specific text, page, or portion of any material that warrants sealing."). In short, the Government's motion is insufficient. Therefore, it is **DENIED**, (doc. 272)**.**

However, given James' failure to support his underlying request with any facts which would indicate he is entitled to relief, not to mention any evidence that the relief is warranted, the Motion will be dismissed. "A 'court may not modify a term of imprisonment once it has been imposed except' in certain circumstances established by statute or rule." United States v. Handlon, 97 F.4th 829, 831 (11th Cir. 2024) (citing 18 U.S.C. § 3582(c); United States v. Giron, 15 F.4th 1343, 1345 (11th Cir. 2021)). One of those circumstances, invoked by James, is known as "compassionate release," Giron, 15 F.4th at 1345, which allows a court to reduce a defendant's term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights," where the court has "consider[ed] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," and found that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Harris, 989 F.3d 908, 909–10 (11th Cir. 2021). To award compassionate release, the court must also find that the sentence "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Commission's policy statement on compassionate release requires that the defendant "not [be] a danger to the safety of any other

person or to the community." United States Sentencing Guidelines § 1B1.13(a)(2) (Nov. 2023); see also United States v. Bryant, 996 F.3d 1243, 1249 (11th Cir. 2021). "Because all three conditions — *i.e.*, support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement — are necessary, the absence of even one would foreclose a sentence reduction." United States v. Tinker, 14 F.4th 1234, 1237–38 (11th Cir. 2021). The present Motion is James' third attempt to obtain a reduction through the compassionate release avenue, and he has presented the Court with no new basis for relief, and he has not argued many factors. Thus, despite Respondent's omitted exhibit, the Court may properly deny James' Motion for Compassionate release.

As for exhaustion, Respondent indicates that James has made an application to BOP for his release. (Doc. 271, p. 3.) However, the document James provided is illegible. Respondent reports that the BOP did not deny James' application but instructed him to return it. (Id.) Thus, Respondent states "[i]t is unclear to the government whether this state of affairs constitutes . . . exhaustion." (Id.) Even if James has exhausted his remedies, which he has not shown, his Motion lacks a viable theory supporting his right to relief beyond those which every prisoner shares—that prison life is difficult—and those already asserted by James and denied by this Court. See James v. United States, 2024 WL 4993649, at *2 (S.D. Ga. Dec. 5, 2024) (holding that though Sentencing Commission guidelines expanded the scope of "extraordinary and compelling reasons" to grant compassionate release, James does not qualify for this section). Just like last time he requested release, James has articulated no basis for relief under 18 U.S.C. § 3553(a), such as: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; and (3) the needs for the sentence to (a) reflect the seriousness of the offense, (b) promote respect for the law, (c) provide just punishment for the offense, (d) afford adequate deterrence, (e) protect

the public, and (f) avoid unwanted sentencing disparities among similar defendants. See 18 U.S.C. § 3553(a). In fact, as noted, James continues to refute the sufficiency of the evidence and even the indictment itself, relying instead on sovereign citizen theories to escape accountability. Thus, despite his current sentence, he fails to respect the law or accept responsibility for the seriousness of the crime he committed, and thus, his sentence, as originally ordered, is warranted. Finally, James has argued no facts indicating a reduction would be consistent with applicable policy statements. As noted by Respondent, James' recent jailhouse infractions indicate that he cannot overcome his burden to show that he is not a "danger to the safety" of the community, as he has been disciplined for assault. (See doc. 271, p. 8 (citing doc. 271-4).) In sum, Respondent's Motion for Extension of Time (doc. 268) is **DISMISSED as moot**, and their Motion to Seal, (doc. 272) is **DENIED**. Nevertheless, James' Motion for Compassionate Release, (doc. 266.) is also **DENIED**.

James' next group of Motions were docketed as Motions to Reduce Sentence. (Docs. 235, 260.) The first one, (doc. 235), was captioned by James as a "Motion for Application of Section 821," and he asks that "if eligible for sentence reduction" pursuant to "sentencing statute § 821," for the Court to "apply" that reduction and "notify" him. (Id.) James has not explained why he might be entitled to relief under "§ 821," or even explain what he is referencing. Such an ambiguous and conclusory filing does not warrant relief. In any event, the Court assumes he intends to reference Amendment 821 to the 2023 edition of the Sentencing Guidelines. That amendment revised the guidelines applicable to the calculation of criminal history with respect to offenders who earned status points based on the commission of an offense while serving a criminal-justice sentence, and to the calculation of offense level for offenders who had zero criminal history points at the time of sentencing. James has not claimed that either scenario

15

applies to him, and thus his motion fails. James' next motion argues that "U.S.S.C. recently enacted law/clause for all gun possessions to inherit a two point deduction off sentence for all offenses where court can't prove defendant knew firearm was stolen and from whom gun was stolen prior to offense and or defendant had no knowledge of guns effects of interstate commerce." (Doc. 260 at 1.) James has tried this argument before. He argued on direct appeal and then again in his §2255 Motion that the "[g]overnment did not prove the exact elements of possession," and that Rehaif v. United States mandated that his conviction be overturned because the government did not prove he knew both that he possessed a firearm and that he belonged to the relevant category of people barred from possession. James v. United States, 2024 WL 1756348, at *5 (S.D. Ga. Apr. 2, 2024), report and recommendation adopted, 2024 WL 1739367 (S.D. Ga. Apr. 23, 2024), and objections overruled, 2024 WL 1810674 (S.D. Ga. Apr. 25, 2024). Here, despite his failure to reference Rehaif and his new phraseology, it is clear James seeks to, yet again, plead the same sufficiency of the evidence claim which has been repeatedly denied as it is baseless. This duplicative filing is thus denied as vexatious. James' Motions to Reduce Sentence are **DENIED** as conclusory (doc. 235), and duplicative (doc. 260).

Finally, James filed a motion which seeks monetary relief from Assistant U.S. Attorney Jennifer Kirkland, District Judge William T. Moore, and the undersigned, for "wrongful act/omission." (Doc. 269.) He seeks $450,000 from the individuals on two theories of relief: (1) he contested on appeal his grand jury, which he argues was improperly paneled; and (2) Assistant U.S. Attorney Kirkland and Judge Moore proceeded on a "fatal" indictment. He claims he notified the Court of the error yet "Judge Stan Baker concluded my theory as false." (Id.) In the past, James has sought relief under § 1983 from immune individuals several times. See, e.g., James v. Moore, 2022 WL 2718722, at *2. Presently, James cannot bring such a suit against

anyone without paying the filing fee or showing that he is "under imminent danger of serious physical injury" because he is a "three-strikes" litigant and is thus limited under 28 U.S.C. § 1915(g). James has not established that he is able to circumvent the restrictions placed upon under § 1915(g) to file such a "Tort Claim."

Similarly, James has been restricted by this Court from filing such suits without paying the fees or alleging a plausible claim.  See <u>James v. Chatham Cnty. Sup. Ct.</u>, 2020 WL 7647787, at *2 (S.D. Ga. Sept. 18, 2020), <u>report and recommendation adopted,</u> 2020 WL 7647503 (S.D. Ga. Dec. 23, 2020).  As explained to James many times, these individuals are immune from suit and attempts to sue them constitute frivolity.  See <u>James v. City of Savannah</u>, 2022 WL 2210066, at *1 (S.D. Ga. June 21, 2022).  Therefore, whether he intended to file a new case or simply seek "sanctions," the relief he requests is **DENIED**.  (Doc. 269.)  James is warned that the Magistrate Judge has been directed to construe any future attempt to seek monetary relief from any immune person James has sued as a frivolous and vexatious request which will be summarily denied with or without response from Respondent.

### IV.    CONCLUSION

James' Motions seeking various form of relief (docs. 250, 251, 253, 254, 260, 264, 266, 267, 269) are all **DENIED**.  Respondent's Motion for Extension of Time, (doc. 268), is **DISMISSED** as moot and Respondent's Motion to Seal, (doc. 272), is **DENIED**.

**SO ORDERED**, this 11th day of April, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA